UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| MARIA COSTA, *individually*, and MARIO SOARES, *individually and on behalf of all others similarly situated*,<br><br>Plaintiffs,<br><br>v.<br><br>FCA US LLC f/k/a CHRYSLER GROUP LLC, a Delaware Corporation,<br><br>Defendant. | Case No.  1:20-cv-11810-ADB<br><br>Honorable Allison D. Burroughs |

**PLAINTIFF'S MOTION FOR A NEW TRIAL**

Under Federal Rule of Civil Procedure 59, Plaintiff Mario Soares, individually and on behalf of the Class, moves for a new trial for the following reasons. *First*, the Court erred in determining that Chapter 93A requires proof of actual knowledge as a predicate for liability. Based on this legal error, the Court (1) erroneously excluded evidence and argument regarding what FCA reasonably should have known about the defect, and (2) erroneously instructed the jury only to consider evidence of FCA's actual, subjective knowledge of the defect. Chapter 93A does not require proof of actual knowledge. It is enough that a defendant reasonably should have known.

*Second*, whatever the appropriate legal standard for knowledge, the Court erroneously excluded evidence that, in 2009, FCA learned that a number of AHRs had failed due to the cracking of plastic within the AHR system, finding that the pre-production failures occurred in AHRs with a "different design." But FCA used the same type of plastic in its final design of AHRs installed in Class Vehicles that it had used in its pre-market testing—a type of

1

plastic known to be "particularly susceptible" to ESC. Evidence of AHR failures during pre-production testing is directly relevant to FCA's notice of the defect at issue in this case.

*Third,* the Court erroneously failed to dismiss Juror Number 9 upon learning, on the sixth day of trial, that he had a potential financial interest in the verdict. Instead, the Court allowed him to stay on the jury for five more trial days, only dismissing him on the final day of trial for "potential bias." The presence of a potentially biased juror at any time during the trial, even if that juror is dismissed before deliberations, can contaminate the jury and deprive a litigant of the right to an impartial jury.

*Fourth*, the jury's verdict that FCA's unfair acts or practices did not harm the Class was against the great weight of the evidence. The jury (correctly) found that FCA, engaged in unfair acts and practices by failing to notify Class Members that their headrests contained a safety defect or to take any corrective action whatsoever. The subsequent finding that those violations caused no harm to the Class is irreconcilable with the evidence that Class Members overpaid to buy or lease a vehicle with a defective AHR.

Individually and cumulatively, these errors and irregularities "had a substantial and injurious effect or influence upon the jury's verdict," warranting a new trial. *Gomez v. Rivera Rodriguez*, 344 F.3d 103, 118 (1st Cir. 2003).

I.  **Legal Standard**

Under Rule 59, a court may grant a motion for a new trial "for any reason for which a new trial has heretofore been granted in an action at law in federal court." Fed. R. Civ. P. 59(a)(1)(A). A new trial is warranted if "the verdict is against the weight of the evidence, that the damages are excessive, or that, for other reasons, the trial was not fair to the party moving; and may raise questions of law arising out of alleged substantial errors in admission

2

or rejection of evidence or instructions to the jury." *Cigna Fire Underwriters Co. v. MacDonald & Johnson, Inc.*, 86 F.3d 1260, 1262–63 (1st Cir. 1996) (citation omitted). A "district court wields broad legal authority when considering a motion for a new trial" and may "order a new trial whenever, in its judgment, the action is required in order to prevent injustice." *Jennings v. Jones*, 587 F.3d 430, 436 (1st Cir. 2009) (citation omitted).

II. <u>Argument</u>

    A. <u>The Court Erroneously Excluded Evidence and Argument That FCA Reasonably Should Have Known About the Defect and Incorrectly Instructed the Jury to Only Consider FCA's Actual, Subjective Knowledge.</u>

Through two motions *in limine*, FCA sought to prevent Plaintiff from presenting virtually any evidence related to the company's knowledge of the AHR defect. First, Defendant asked the Court to exclude all evidence of FCA's knowledge of the defect after August 2009 as "irrelevant." ECF No. 181-82. Second, FCA asked the Court to exclude all evidence of "the supposed AHR failures" that occurred before August 2009 in its pre-sale testing of the AHRs. FCA argued that such evidence is irrelevant and potentially confusing because it only indicates that FCA "should have known" about the AHR defect and that evidence of what it "should have known" does not meet the correct legal standard. ECF No. 224 at 5.

The Court granted both MILs, ruling that "argument as to what FCA should have known about the alleged defect, as well as evidence solely relevant to that issue, will not be permitted." ECF No. 310. Further, the Court instructed the jury that, when considering the "deceptive" prong of Chapter 93A, it could only consider what FCA actually knew, not what it reasonably "should have known," about the defect:

3

> In determining whether FCA failed to disclose a material fact to consumers at the time of the transaction, you must determine whether it knew about the material fact at the time of the transaction.
>
> Here, Mr. Soares, on behalf of himself and the Class, alleges that the deceptive act at issue is FCA's failure to disclose to the Class a material fact, the disclosure of which may have influenced the Class not to purchase a vehicle with an AHR system. The notion of disclosure necessarily implies that the fact in question is known to the person expected to disclose it. FCA is not required to disclose what it did not know. In determining whether the Class has proved that FCA failed to disclose a material fact, *you must examine what FCA knew, not what a reasonable person or company would have known.* The test is a subjective one.

11/13/23 Tr. at 25:15-26:6 (Jury Instruction on 93A: Deceptive Act or Practice) (emphasis added).

This was an error in law. Chapter 93A does not require proof of actual knowledge as a predicate for liability. It is enough that a defendant reasonably should have known. Thus, evidence that FCA reasonably should have known about the defect was relevant to Plaintiff's claim under the "deceptive" prong of Chapter 93A and should not have been excluded.

When considering a claim for deceptive conduct under Chapter 93A, Massachusetts courts and regulations analyze the totality of the circumstances, whether defendant exercised reasonable care to know or had reasonable grounds for knowing, and whether the defendant undertook any investigation of the facts. In *Slaney v. Westwood Auto, Inc.*, 366 Mass. 688 (1975), for example, the Supreme Judicial Court analyzed Chapter 93A requirements where the defendant in part failed to disclose an engine defect to plaintiff. *Id*. at 690, 702–03. The court described Chapter 93A as "a statute of broad impact which creates new substantive rights and provides new procedural devices for the enforcement of those rights" and that has "far-reaching effects." *Id*. at 693.

4

In characterizing common law actions for fraud and deceit covered by Chapter 93A, the court expressly held that "*it is not necessary to establish that the defendant knew that the representation was false.*" *Id*. at 703 (emphasis added). Plaintiff had alleged that "defendant *knew or should have known* that the engine was defective at the time of sale and did not disclose this fact to the plaintiff," and the court found that "a failure to disclose a defect of the nature alleged by the plaintiff is unlawful under this standard, and is actionable under [Chapter 93A] § 9." *Id*. at 703 (emphasis added).

Similarly, in *Lawton v. Dracousis*, 14 Mass. App. Ct. 164 (1982), the court analyzed a 93A claim alongside negligent misrepresentation claim regarding knowledge based not only on what the defendants knew, but what they had "reasonable grounds for believing" and whether a defendant had "exercised reasonable care." *Id*. at 170–71. The court held that this analysis was applicable under Chapter 93A for alleged violations of Attorney General regulation 940 Code Mass. Regs. 3.05 and 3.16 "dealing with deceptive statements and *nondisclosure*." *Id.* at 171 (emphasis added). Although Regulation 3.05 relates to "general misrepresentations," it also includes the sale of products where the seller has "fail[ed] to adequately disclose additional relevant information" including claims relating to "safety, strength, condition, or life expectancy" of a product. 940 C.M.R. 3.0. The court found that the defendant exercised reasonable care to determine if building code violations existed in part by *investigating* the issue with the building inspector and asking him about the status of any code enforcement violations affecting the property at issue. *Id*. at 169–171.

This reasoning and application of the knowledge requirement, analyzing what defendant had reason to know based on an exercise of reasonable care, is reflected in Massachusetts Attorney General regulations governing motor vehicle defects. The

5

regulations analyze and define a vehicle "defect" as "any defect in the design, construction or performance of a motor vehicle . . . which the manufacturer *has reason to believe* may occur or exist in a substantial number of vehicles . . . and which (a) creates an unreasonable risk of accident, death or injury, (b) substantially impairs the operation or performance of the vehicle; or (c) substantially impairs the value of the vehicle." 940 C.M.R. 5.01 (emphasis added).[1]

FCA cited *Underwood v. Risman*, 414 Mass. 96 (1993), to argue that proof of actual knowledge is required in cases involving nondisclosure of a material fact under Chapter 93A. But the *Underwood* court expressly found that whether "knowledge can be inferred from receipt of a complaint which requires an investigation of the facts" was not at issue in that case "because there was no hint of such a complaint being directed to [defendant]." *Id*. at 100.[2]

In contrast, in this case, FCA received thousands of complaints about inadvertent

---

[1] See also Mass. Continuing Legal Ed., Inc., *Chapter 93A Rights and Remedies*, Ch. 2 (ECF No. 253-2) § 2.5.4(a): When Defendant is Liable Without Knowing About the Deception ("If there have been misrepresentations or violations of some of the attorney general's regulations, defendants may be found liable *even if they had no actual knowledge of their misrepresentations*.") (emphasis added).

[2] In addition, importing an "actual knowledge" requirement for all nondisclosure claims under Chapter 93A renders the willful and knowing element for multiple damages redundant. In *LaBouef v. St. Laurent*, No. 05-1869, 2010 Mass. Super. LEXIS 184 (Super. Ct. Mass. July 28, 2010), the court analyzed defendant's counterclaims under Chapter 93A, sections 2 and 9, and found that plaintiff violated section 93A despite that "plaintiff's actions or failures were [not] more than negligence, inattentiveness to detail or poor judgment." *LaBouef*, 2010 Mass. Super. LEXIS 184, at *6. The court held that, despite "[h]aving found that plaintiff's conduct rises to the level of a 93A violation," plaintiff's violation was not willfully or knowingly committed with an intent to deceive or "with the conscious objective of acting unfairly or deceptively" for purposes of multiplying damages. *Id*. at *5-6; *see also Giannasca v. Everett Aluminum, Inc.*, 13 Mass. App. Ct. 208, 213 (Mass. Ct. App. 1981) ("The Supreme Judicial Court has rejected the proposition that c. 93A requires a showing that the defendant's unfair or deceptive act was knowing or wil[l]ful" and analyzed knowledge for purposes of determining whether plaintiff was entitled to multiple damages).

AHR deployments, many reporting injuries or wrecks. Indeed, this Court held that while consumer complaints alone would be "insufficient to show that FCA knew about the defect . . . a reasonable juror could *infer* that FCA knew about the design defect in the sleds" when "*coupled with the other evidence* Soares offers . . . This is especially true here where the consumer complaints indisputably relate to the exact defect at issue in this case." ECF No. 109 (Sept. 30, 2022 Mem. and Order on Mot. for Summ. J. and Class Cert. at 21 n.8) (emphases added).

The facts excluded also would have supported a finding of willful blindness, which, under Massachusetts law, is legally equivalent to actual knowledge.[3] *Glob.-Tech Appliances, Inc. v. SEB S.A.*, 563 U.S. 754, 766 (2011) (defendants who "deliberately shield[] themselves from clear evidence of critical facts that are strongly suggested by the circumstances . . . are just as culpable as those who have actual knowledge"); *see also* Criminal Jury Instructions for the District Courts of the First Circuit 2.15 ("Willful Blindness As a Way of Satisfying 'Knowingly' ").[4] A defendant is willfully blind if it (1) "subjectively believe[s] that there is a high probability that a fact exists" and (2) "take[s] deliberate actions to avoid learning of that fact." *Glob.-Tech Appliances*, 563 U.S. at 769. This doctrine applies in both criminal and civil cases. *Bruner Corp. v. R.A. Bruner Co.*, 133 F.3d 491, 496 (7th Cir. 1998); *Perry v. Roy*, No. CV 10-10769, 2016 WL 1948823, at *3 (D. Mass. May 3, 2016) (evidence was sufficient for the jury to conclude that nurses had

---

[3] A plaintiff may contend that the evidence "will support a finding of actual knowledge," and argue that if the factfinder rejects the plaintiff's case as to actual knowledge, it "could rationally find willful blindness[.]" *United States v. Heredia*, 483 F.3d 913, 922 (9th Cir. 2007) (en banc) (holding that the government could both argue for actual knowledge and request a jury instruction on willful blindness).

[4] Available at https://www.mad.uscourts.gov/resources/pattern2003/.

made themselves willfully blind to plaintiff's serious medical injuries). Plaintiff can establish FCA's "willful blindness" through circumstantial evidence. *See* Criminal Jury Instructions for the District Courts of the First Circuit 3.05 ("Circumstantial evidence is indirect evidence, that is proof of a fact or facts from which you could draw the inference, by reason and common sense, that another fact exists, even though it has not been proven directly. You are entitled to consider both kinds of evidence.").

In short, evidence of what FCA *reasonably should have known* was relevant to Plaintiff's claim for deceptive conduct under Chapter 93A. Thus, the Court's exclusion of such evidence, and its instruction to the jury only to consider evidence of what FCA actually knew, were errors that "had a substantial and injurious effect or influence upon the jury's verdict," warranting a new trial. *Gomez*, 344 F.3d at 118.

### B. The Court Erroneously Excluded Evidence That FCA's Pre-Market Testing Revealed The Cracking of Plastic in Its AHR Systems.

Whatever the correct standard for "knowledge," the Court improperly excluded relevant evidence. At trial, FCA argued it did not know that its AHRs were defective until 2016, when it first opened an investigation into the issue. To counter this argument, Plaintiff sought to offer evidence showing that FCA knew or should have known that its AHRs were failing as a result of Environmental Stress Cracking ("ESC") long before it opened its investigation in 2016. Specifically, Plaintiff sought to offer evidence that, in 2009, FCA conducted pre-market heat and humidity testing that caused multiple AHRs to fail due to the cracking of plastic within the AHRs, which should have caused a reasonable company to investigate the cause of those failures. Yet FCA failed to properly or fully investigate those failures.

FCA moved *in limine* to exclude, among other things, all evidence of the AHR failures during its pre-market testing on grounds of relevance and prejudice, arguing that it changed the type of plastic used in the AHRs before the AHRs in Class Vehicles were manufactured. ECF No. 225 (FCA's MIL No. 19). The Court granted FCA's motion in part, ruling that "[e]vidence of pre-production testing and inadvertent deployment involving a different AHR design than the design for the AHRs in the Class Vehicles, will not be admitted." ECF No. 309. This was an error. FCA used the same type of plastic in its final design of AHRs installed in Class Vehicles that it had used in its pre-market testing—a type of plastic known to be "particularly susceptible" to ESC. And, the culprit in AHR failures is not just the type of plastic used. It is actually the *combination* of an inferior plastic *and* the presences of a lubricant. A proper investigation of the pre-market AHR failures would have alerted FCA to the presence of the lubricant. Thus, evidence of AHR failures during pre-production testing is directly relevant to FCA's notice of the defect at issue in this case.

Plaintiff and FCA agree that ESC is the root cause of the unexpected deployments of AHRs in Class Vehicles. ESC occurs when the internal plastic of the spring-loaded headrest breaks down, cracks, and eventually gives way. "█████████████████████████ █████████████████████████████████████████████████." ECF No. 264-1 (Davis Apr. 30, 2019 Report) at 10 n.5. Plaintiff's plastics expert, Bruce Davis, Ph.D., found that █████████████████████████████████████████████████████████████ ████████████████████." *Id*. at 4. Fundamentally, the plastic used in the AHR sleds interacted with an incompatible oil that causes the plastic to gradually break down, crack, and ultimately fail. According to Dr. Davis:

████████████████████████████████████████████████████

[REDACTED]

*Id.* He found that the [REDACTED]

[REDACTED]

[REDACTED]." *Id.* at 5; *id.* at 11-12 ([REDACTED]

[REDACTED]

[REDACTED]); *id.* at 54 ("[REDACTED]

[REDACTED]."). Dr. Davis noted [REDACTED]

[REDACTED]

[REDACTED]

[REDACTED]

[REDACTED].

*Id.* at 5.

FCA conceded that [REDACTED]

[REDACTED]

[REDACTED]." ECF No. 226 at 3. That is, [REDACTED]

[REDACTED]

[REDACTED]." ECF No. 264-4 (June 30, 2021 Davis Report) at 6. The AHRs that failed were [REDACTED]

[REDACTED]

[REDACTED]. *Id.* at 3-4. Finally, the plastic used in the AHRs [REDACTED]. *Id.* at

4. But as Dr. Davis stated, ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇." ECF No. 264-1 (Apr. 30, 2019 Davis Report) at 5. Thus, ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇." ECF No. 264-4 (June 30, 2021 Davis Report) at 6.



Thus, the Court's decision to exclude evidence of these pre-market AHR failures as irrelevant was incorrect. The Court reasoned that the evidence was irrelevant because it "involve[ed] a different AHR design than the design for the AHRs in the Class Vehicles." ECF No. 309; *see also* 10/31/23 Trial Tr. at 17:3-6 ("THE COURT: So if it's a different plastic and the plastic fails and they put on another plastic and they keep going until they get a plastic that doesn't fail, you don't get the ones that did fail."). But ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇." Ex. A (Apr. 30, 2019 Davis Report) at 5. Thus, the pre-production AHR failures should have put FCA on notice of the defect in the AHRs in Class Vehicles.

At no point, however, did FCA properly or fully investigate these pre-production failures:



Ex. B (June 30, 2021 Davis Report) at 6 (emphasis added). Plaintiff's expert and, indeed, even FCA's own engineers testified that ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇

███████████████████████████████████████████████████████

█████████████████. ECF No. 99-4, Ex. E (Cassidy Dep. Tr.) at 282:17-19, 53:17-56:16; ECF No. 99-4, Ex. F (GRAMMER 0001187); ECF No. 99-4, Ex. G (Matthews Dep Tr.) at 128:12-130:8; 129:5-10 ("█████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████.")).

Accordingly, evidence of deployment failures in FCA's pre-market testing of its AHRs—deployment failures caused by the cracking of the same type of plastic used in the AHRs in Class Vehicles and known to be "particularly susceptible" to ESC—and FCA's failure to fully and properly investigate those failures is highly relevant to the issue of FCA's notice of the defect in its AHR systems. And because a reasonable person could determine that the evidence of AHR failures in FCA's pre-market testing could support a finding that FCA knew or should have known that its AHRs were defective, "the weight to be given to the evidence [should have been] left to the jury." *United States v. Paulino*, 13 F.3d 20, 23 (1st Cir. 1994). This error warrants a new trial.

### C. The Court Erred By Failing to Dismiss Juror Number 9 Upon Finding Potential Bias.

On the sixth day of trial, the Court learned and informed the parties that Juror Number 9 had communicated to the Court that he had a potential financial interest in the verdict. Nevertheless, the Court allowed him to remain on the jury until the final day of trial, dismissing him for "potential bias" only just before the parties delivered closing arguments. By allowing Juror Number 9 to remain on the jury for five trial days even after finding that he had a "potential bias," the Court deprived Plaintiff of his right to an impartial jury.

On November 6, 2023, the Court informed that parties that Juror Number 9 had sent the Court's courtroom deputy a screenshot of an email he received from his employer on November 3 stating that the employer was ███████████████████████████ ███████████████████████. 11/6/23 Tr. at 11:19-25. Juror Number 9 admitted ███████████████████████████████████████████████████████████ ███████████████████████████████████████████████████████████ ████████████████████████████." *See* 11/6/23 Tr. at 14: 1-4. In other words, Juror No. 9 was not just conveying a "potential" financial interest in the outcome of the case. He had an actual interest in the outcome. Despite the Juror's admitted financial interest, the Court allowed him to stay on the jury based on his statement that he could still be impartial, with an instruction that ███████████████████████████████████████████ ███████████████████████████████████████████████████...." *See* 11/6/23 Tr. at 15:21-16:1.

On the final day of trial, five trial days after the Court was aware of Juror Number 9's financial interest in the verdict, the Court dismissed Juror Number 9:



11/13/23 Tr. at 3:2-6 (emphasis added).

One "touchstone of a fair trial is an impartial trier of facts—a jury capable and willing to decide the case solely on the evidence before it." *McDonough Power Equip., Inc. v. Greenwood*, 464 U.S. 548, 554 (1984) (internal quotation marks omitted). Courts generally

13

consider potential juror bias in the context of *voir dire* and for-cause challenges to seating jurors. Here, the course of events makes much of the analysis unnecessary, because Juror Number 9 did not discover his potential financial interest in the verdict until he had already been seated on the jury, but the Court allowed him to remain on the jury for five trial days after discovering his potential bias, potentially contaminating the entire jury.

This was an error. A litigant's right to an impartial jury is not limited to the deliberations phase of a trial. The presence of a potentially biased juror at any time during the trial, even if that juror is dismissed before deliberations, can deprive a litigant of the right to an impartial jury, just as extraneous communications to a juror about a matter pending before the jury is "presumptively prejudicial." *Remmer v. United States*, 347 U.S. 227, 229 (1954); *see also Krause v. Rhodes*, 570 F.2d 563, 568 (6th Cir.1977) ("The presumption that extraneous communications with jurors are prejudicial has also been applied in civil cases."). Thus, a new trial is warranted.

### D.     The Verdict Was Against The Weight of The Evidence.

The jury's verdict on the fourth question in the verdict form was against the weight of the evidence. The jury found that FCA's unfair acts and practices did not harm the Class. ECF No. 343, Verdict Form. This finding contradicts all of the evidence on damages, much of it undisputed. This warrants a new trial. *See Jennings v. Jones*, 587 F.3d 430, 436 (1st Cir. 2009) (A district court may grant a new trial if "the verdict is against the weight of the evidence.").

Plaintiff's unfair practices theory was that FCA, upon learning that ***every class vehicle*** had a defect causing "inadvertent deployments"—several of them causing accidents—failed to take any action to notify consumers of this safety defect in their

headrests or to take any other corrective action whatsoever. *See* 11/13/23 Tr. at 22:21-23; 24:1-4; 27:19-28:19 (Jury Instructions on "Defect," "Case Overview," and "Unfair Act or Practice"); *id.* at 72:12-73:1 (closing argument explaining that FCA "refuse[s] to fix this problem"). Although FCA hotly contested those findings, the jury disagreed. And FCA did not contest the evidence that, assuming a violation, the Class was harmed by "overpaying to buy or lease a vehicle that has a defective AHR." *Id.* at 74:2-4.

## III.   Conclusion

For these reasons, the Court should grant a new trial.

Dated:  December 20, 2024                                Respectfully submitted,


By: /s/  *Stuart C. Talley*

Stuart C. Talley (*pro hac vice*)
Ian J. Barlow (*pro hac vice*)
KERSHAW TALLEY BARLOW PC
401 Watt Avenue
Sacramento, California 95864
Telephone: (916) 779-7000
Facsimile: (916) 244-4829
Email: stuart@ktblegal.com
Email: ian@ktblegal.com

Mark P. Chalos (*pro hac vice*)
Kenneth S. Byrd (*pro hac vice*)
Andrew R. Kaufman (*pro hac vice*)
Christopher E. Coleman (*pro hac vice*)
Amelia A. Haselkorn (*pro hac vice*)
LEIFF, CABRASER, HEIMANN & BERNSTEIN, LLP
222 Second Avenue South, Suite 1640
Nashville, Tennessee 37201
Telephone: (615 313-9000
Facsimile: (615) 313-9965
mchalos@lchb.com
kbyrd@lchb.com
ccoleman@lchb.com
ahaselkorn@lchb.com

Kimberly A. Dougherty, BBO # 6589014
Paula S. Bliss, BBO # 652361
JUSTICE LAW COLLABORATIVE, LC
19 Belmont Street
South Easton, MA 02375
Telephone: (508) 230-2700
kim@justicelc.com
paula@justicelc.com

*Attorneys for Plaintiffs and the Class*

**CERTIFICATE OF SERVICE**

I, Stuart C. Talley, attorney for Plaintiff Mario Soares, hereby certify that on this 20th day of December, 2024, a true copy of the foregoing, filed through the ECF system, will be sent electronically to the following registered participants as identified on the Notice of Electronic Filing and paper copies will be served upon anyone indicated as a nonregistered participant.

*/s/ Stuart C. Talley*
Stuart C. Talley