UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| MARIA COSTA, *individually*, and MARIO SOARES, *individually and on behalf of all others similarly situated*,<br><br>Plaintiffs,<br><br>v.<br><br>FCA US LLC f/k/a/ CHRYSLER GROUP LLC, a Delaware Corporation, and Does 1 through 100, inclusive,<br><br>Defendants. | *<br>*<br>*<br>*<br>*<br>*<br>* Civil Action No. 20-cv-11810-ADB<br>*<br>*<br>*<br>*<br>*<br>* |

**MEMORANDUM AND ORDER**

BURROUGHS, D.J.

Plaintiff Mario Soares[1] ("Plaintiff") filed this case on October 2, 2020, alleging that Grammer Industries, Inc. ("Grammer") manufactured defective headrests that were installed in vehicles sold or leased by FCA US LLC ("FCA," or Defendant"), and that FCA did not disclose this information to consumers. [ECF No. 1 ("Compl.")]. Plaintiff—seeking to represent a class of Massachusetts residents who own FCA cars of seven identified model years—brought a Massachusetts General Laws Chapter 93A claim for economic losses allegedly caused by Defendant's deceptive and unfair statements and actions concerning the headrests. [Id. ¶¶ 60–71]. Following an 11-day trial on Plaintiff's claims, the jury found that Defendant did not

---

[1] Plaintiff and his wife asserted a number of other claims, but Plaintiff Soares's Chapter 93A claim against FCA US LLC is the only one that went to trial, and therefore this opinion focuses on that claim.

engage in deceptive practices, and that Defendant had engaged in unfair practices, but that those unfair practices had not harmed the class. [ECF No. 355]. Now before the Court is Plaintiff's motion for a new trial under Fed. R. Civ. P. 59(a). [ECF No. 370]. For the reasons set forth below, the motion is **DENIED**.

I.     STANDARD OF REVIEW

The Court may grant a motion for a new trial "if the verdict is against the demonstrable weight of the credible evidence," or if it "results in a blatant miscarriage of justice." Foisy v. Royal Maccabees Life Ins. Co., 356 F.3d 141, 146 (1st Cir. 2004) (quoting Sanchez v. P.R. Oil Co., 37 F.3d 712, 717 (1st Cir. 1994)). "The district court may 'independently weigh the evidence' in deciding whether to grant a new trial." Cham v. Station Operators, Inc., 685 F.3d 87, 97 (1st Cir. 2012) (quoting Jennings v. Jones, 587 F.3d 430, 436 (1st Cir. 2009)). "[A] district court wields 'broad legal authority' when considering a motion for a new trial . . . ." Jennings, 587 F.3d at 436 (quoting de Pérez v. Hosp. del Maestro, 910 F.2d 1004, 1006 (1st Cir. 1990)). At the same time, a district judge "cannot displace a jury's verdict merely because [she] disagrees with it' or because 'a contrary verdict may have been equally . . . supportable.'" Id. (quoting Ahern v. Scholz, 85 F.3d 774, 780 (1st Cir. 1996)).

> [W]hen an argument that the evidence was insufficient forms the basis of a motion for new trial, the district court is generally well within the bounds of its discretion in denying the motion using the same reasoning as in its denial of a motion for judgment as a matter of law.

Lama v. Borras, 16 F.3d 473, 477 (1st Cir. 1994).

II.     **EVIDENCE AT TRIAL**

In reaching its verdict, the jury could have found the following facts, based on the evidence presented at trial.[2]

In 2010, Defendant began equipping some of its vehicles with a safety device known as an "active head restraint" or "AHR" system. [ECF No. 346 at 96:5–8]. Defendant manufactured approximately 8.6 million vehicles nationwide that were equipped with AHRs. [Id. 96:24–25]. These were partially sourced by Grammer. [Id. at 111:14]. AHRs resemble normal headrests while in an undeployed state. [Id. at 102:25–103:1]. They have a mechanism that causes them to deploy, [id. at 103:1–2], in the event of a rear-end collision, [id. 133:18–19; 164:22–165:1]. When they deploy, part of the headrest moves forward. [Id. at 104:4–5]. The deployment occurs in 30 milliseconds or less. [Id. at 109:4–5].

In 2011, FCA started receiving reports that some AHRs were deploying randomly without a collision.[3] [ECF No. 348 at 177:21–178:16]. This was apparently due to a phenomenon called "environmental stress cracking" or "ESC." [ECF No. 346 at 119:8–15]. The ESC was caused by ester oil contamination. [Id. at 125:15–20, 133:1–7]. Defendant started investigating inadvertent deployments due to ESC in 2016. [ECF No. 353 at 146:22–147:1]. The first reports FCA saw about ESC caused by the ester oil were from 2017, [ECF No. 347 at 12:1], at which time there had been 8,716 warranty claims about the headrests, [id. at 13:3]. In

---

[2] "While the Court is not required to weigh evidence or draw inferences in favor of the jury's verdict for purposes of a Rule 59 motion, in this case, the Court does not believe that the verdict is against the weight of the evidence or that the jury erred in making the credibility determinations or drawing the inferences that it did." Rinsky v. Cushman & Wakefield, Inc., No. 16-cv-10403, 2018 WL 1188750, at *2 n.1 (D. Mass. Mar. 7, 2018), aff'd, 918 F.3d 8 (1st Cir. 2019).
[3] Defendant had gotten reports of this as early as 2010, but these were ultimately determined to be attributable to a different cause. [ECF No. 346 at 166:7–9].

total, a fraction of a percent of vehicles with these AHRs had this problem.  [ECF Nos. 346 at 161:15–25; 348 at 153:8–154:14].

Defendant instituted an extended warranty program regarding the AHRs, which covers the cost of replacing a deployed headset and ends after a vehicle has been in service for ten years.  [ECF No. 346 at 97:12–16].

Plaintiff purchased a 2015 Jeep Grand Cherokee on May 22, 2015.  [ECF No. 346 at 97:3–4].  On or about February 17, 2020, Plaintiff was driving the Jeep, and while he was parked, his passenger side AHR deployed.  [Id. at 97:8–9].  Pursuant to the warranty program, Plaintiff received a free replacement AHR.  [Id. at 97:12–13].

### III.    APPLICABLE LAW

Massachusetts General Laws Chapter 93A prohibits "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce."  Mass. Gen. Laws ch. 93A, § 2 (1978).  "A successful claim under Chapter 93A requires a showing of (1) a deceptive act or practice on the part of the defendant; (2) an injury or loss suffered by the plaintiff, and (3) a causal connection between the defendant's deceptive act or practice and the plaintiff's injury."  Gallagher v. Amedisys, Inc., No. 17-cv-11390, 2018 WL 2223673, at *7 (D. Mass. May 15, 2018).  What constitutes an unfair or deceptive act is both broad and fact-specific.  Id.

### IV.    DISCUSSION

#### A.    Mass. Gen. L. Ch. 93A Knowledge Standard

Plaintiff's first argument for a new trial is that the Court improperly excluded probative evidence and wrongly instructed the jury that a Chapter 93A claim based on deception by omission requires actual knowledge, rather than what the Defendant should have known.  [ECF

No. 370 at 3]. Defendant argues that the standard requires actual knowledge. [ECF No. 373 at 9].

A failure to disclose material facts can form the basis for a 93A deception claim, if the party knows of those facts. Underwood v. Risman, 605 N.E.2d 832, 835 (Mass. 1993). The Court incorporates its reasoning from its prior ruling on this issue and has no reason to revisit that ruling. See [ECF No. 310]. Therefore, a new trial will not be granted on this basis.

### B.     Pre-Market Testing

Plaintiff's second argument is that the Court improperly excluded evidence that pre-market testing of the AHRs revealed cracking plastic in AHR systems. [ECF No. 370-1 at 8]. Defendant argues that this evidence was properly excluded as unduly prejudicial. [ECF No. 373 at 13].

The Court again agrees with Defendant. Both sides' witnesses acknowledged that the preproduction failures were due to other causes. [ECF Nos. 346 at 166:7–9; 353 at 145:201–46:21]. Indeed, Plaintiff's own expert explained that the ESC failures at issue—i.e. those caused by the ester oil contamination—were caused by a breakdown over an extended period of time. [ECF No. 347 at 19:14–18]. Evidence of failures from other causes would have been confusing and prejudicial to the jury and was properly excluded.

### C.     Juror Bias

On the sixth day of the trial, the Court learned of a potential conflict from Juror Number 9 but did not dismiss him until the final day of trial, albeit before deliberations began. Plaintiff claims that this delay irreparably tainted the jury. [ECF No. 370-1 at 12]. Defendant argues there is no evidence that Juror Number 9 impacted the trial in any way. [ECF No. 373 at 17].

Even assuming that Juror Number 9 needed to be excused for cause,[4] there is no evidence of prejudice. The Court ordered specifically that Juror Number 9 not speak to any other juror about the conflict, [ECF No. 350 at 15:21–16:2],[5] and the Juror was excused prior to deliberations. [ECF No. 354 at 3:3]. Courts "presume that jurors obey a court's instructions." United States v. Ponzo, 853 F.3d 558, 584 (1st Cir. 2017). Therefore, the Court does not see this as a basis for a new trial.

### D. Weight of the Evidence

Plaintiff's final argument is that the jury finding that there was no injury to the class as a result of the found unfair practice was against the weight of the evidence. [ECF No. 370 at 14]. "[T]rial courts . . . exercise their discretion in favor of granting a new trial sparingly since 'a jury's verdict on the facts should only be overturned in the most compelling circumstances.'" Taber Partners I v. Ins. Co. of N. Am., 917 F. Supp. 112 (D.P.R. 1996) (quoting Wells Real Est., Inc. v. Greater Lowell Bd. of Realtors, 850 F.2d 803, 811 (1st Cir. 1988)).

Plaintiff argues that the Class was harmed by "overpaying to buy or lease a vehicle that has a defective AHR." [ECF No. 370 at 15 (citing trial transcripts)]. That said, the class included many members whose AHRs were not defective, [ECF No. 373 at 23–24 (citing trial transcripts)], meaning that many class members got the full "benefit of [the] bargain." Rule v. Fort Dodge Animal Health, Inc., 604 F. Supp. 2d 288, 295 (D. Mass. 2009) ("[W]here a product

---

[4] The Court made clear during the proceedings that it dismissed Juror Number 9 out of an abundance of caution, and that it did not believe he necessarily needed to be struck for cause. [ECF No. 350 at 17:10–14].

[5] Moreover, the Court, as is its usual practice, gave the following preliminary instruction to the entire jury at the start of the trial: "[D]o not talk among yourselves about the case until the end of the case when you go to the jury room to decide on your verdict." The Court also reminded them at the end of each day not to discuss the case with anyone.

has fulfilled its useful life without any manifestation of defect, a plaintiff has received the benefit of his or her bargain and has not suffered any 'injury.'"). Moreover, for the class members that experienced the problem, the warranty program made them whole. Thus, Plaintiff has not presented compelling evidence that the verdict finding no injury to the class was so against the weight of the evidence that a new trial is warranted.

For these reasons, Plaintiff's motion is **DENIED**.

**SO ORDERED.**

August 1, 2025                                             */s/ Allison D. Burroughs*
                                                          ALLISON D. BURROUGHS
                                                          U.S. DISTRICT JUDGE